Good morning, Your Honors. Morning. May it please the Court, Student Counsel Brian Hawkinson, representing Petitioner Gabriel Espinoza, on behalf of the Hastings Appellate Project, supervised by Gary Watt and Leah Spiro. At this time, I'd like to reserve three minutes on rebuttal, or for rebuttal. Okay. This Court should grant the petition before it and hold that Mr. Espinoza is not removable for two reasons. First, this Court's precedent in applying the Taylor analysis prevents looking beyond the text of the statute for the type of explicit overbreath that's present in this case. And second, Mr. Espinoza is not precluded from bringing this argument by the doctrine of exhaustion because the remedy did not appear available to him as a matter of right at the time of his proceedings in front of the Immigration Court. To my first point, Mr. Espinoza is not removable because the California definition of methamphetamine under its Health and Safety Code is overbroad compared to its federal counterpart in the Controlled Substances Act. Specifically, the California statute includes both optical and geometrical isomers of methamphetamine, whereas the federal definition only includes optical isomers. Counsel, are you aware that this very matter is before the Court in another case, which is scheduled for argument in Pasadena, Francisca Rodriguez-Gambos? I am, Your Honor. And the issue there, the government is taking the position that geometric isomers don't exist. Correct. If we decide that the government is right in that case, would that affect your case? That would affect our case, Your Honor. However, Mr. Espinoza is taking the position that this Court is prevented by its precedent in applying the realistic probability exception as the government wishes to apply it here. Because of the text of the statute? Because of the text of the statute. That's correct, Your Honor. Can the text of the statute, when it refers to a nonexistent substance, be considered anymore? Doesn't the statute become absurd? It may become absurd, Your Honor. However, the test in applying the realistic probability has always been when there's ambiguity in the meaning of the statute. And here, the government is looking beyond the statute. If the statute refers to a fairy godmother, do we still consider that? I don't think that's the case here, Your Honor. However, yes. Is there a fact dispute? I mean, in that case that will be argued, does the – it's a criminal defendant or a Petitioner. Whoever it is on the other side of government, are they arguing that that's not true, or is everyone agreeing it doesn't exist? No, it's not. It's an open issue, Your Honor. And the Petitioner there, the arguments are being made against the government's contention there, specifically that the government expert has contradicted previous statements about geometric isomers in methamphetamine. Is there going to be any affirmative evidence that there is such a thing as a geometric isomer? That I don't know, Your Honor, in that case. Could I ask how we deal with the problem that this wasn't raised before the agency? Absolutely, Your Honor. Exhaustion is not required because the issue appeared to be foreclosed at the time of the proceedings below. This court elaborated on that test in Socasun v. Ashcroft, where it held that relief is only available as a matter of right if the agency is able to give it unencumbered consideration, or to put it the other way, as this court said, it's not available as a matter of right if the agency's position appeared already set. And here, at the time of Mr. Espinosa's proceedings in 2017, the issue did appear to be set by this court's opinions in Valdivinos-Torres and in Coronado v. Holder. In Valdivinos-Torres, the panel there held that the methamphetamine definition in California was a match to the federal definition, saying that methamphetamine is, of course, a controlled substance. But I think you're arguing that this Lorenzo case changed that and removed the impediment, but I'm wondering how the petitioner in Lorenzo exhausted this before the BIA if it wasn't available. The petitioner there, Lorenzo brought it in the proceedings below. The fact that Lorenzo's counsel brought a novel argument does not upend the test for the exhaustion test applicable in Socasun. That the agency's determination that it appeared foreclosed by the language in Valdivinos and Coronado. It didn't appear foreclosed to Lorenzo. Correct, Your Honor, but it's an objective standard. Again, it's not a bar from Lorenzo's counsel bringing a novel argument. Valdivinos was cited for that proposition on at least two instances in the Southern District of California, in Vega-Ortiz and Luque-Hernandez. It was also Coronado, which held the same thing, that there was a match between the statutes, was cited by the government's brief in Lorenzo, which can be found on page 157 of the record there. And the BIA in Lorenzo ultimately concluded, before it came before this court, that the statutes were a match. That was in 2015, two years before Mr. Espinosa's proceedings. So the issue appeared to be foreclosed at the time that he brought it, and he should not be precluded from bringing it now on appeal. Turning back to this court's precedent in applying the realistic probability test, in U.S. v. Griselle, the en banc panel there, specifically- En banc court. En banc court, apologies, Your Honor. Specifically stated that when a state statute explicitly defines a crime more broadly than the federal definition, the overbreadth is evident from the text. That was reiterated in U.S. v. Vidal, and the bright line was once again drawn in U.S. v. Burgos-Ortega, where this court held that the realistic probability test applies when the statute is silent or ambiguous as to the overbreadth, not where it is explicit. The analysis there has always relied on the meaning of the text, and here the government seeks to go beyond that and contradict the plain meaning of the text by bringing in scientific evidence. That's never been done before in this court's application of the realistic probability test. In addition to adhering to precedent, there are three additional reasons why this court should refrain from applying the realistic probability test in the way the government asks it to do. First, allowing the government to challenge the underpinnings of a state statute impedes on the state's legislative prerogative. The California legislature is in a better position than this court to conduct the kind of fact-finding that would be required to make the determination about the science behind methamphetamine, and the California legislature is also better suited to assess the will of its constituents in determining how broad to draw its controlled substance statutes. And in fact, California has made explicit choices about when to apply the definition of isomer to a particular substance. The default definition of isomer under health and safety code is geometric and optical isomers, and that is the definition that's applied to methamphetamine. However – So if we thought that you had an excuse for not exhausting this, what should we do now? Should we remand for the BIA to consider it in the first instance? No, Your Honor. As noted in Fernandez-Ruiz, this court does not need to remand on an issue that is not within the agency's expertise, and here interpreting a criminal statute is not something that expressly falls within the agency's expertise. But if interpreting the criminal statute depends on this question of fact about science in the world, then we can't resolve a question of fact. So what do we do? If the court is willing to let the government apply the realistic probability test and try to prove that geometric isomers do not exist, again, our contention is – Because, I mean, realistic probability is usually – it's just a very unusual interpretation of the statute that we don't think the government would ever do. But this is actually, like, a fact. Like, it either exists or it doesn't, right? It's hard to interpret the statute in a way that just has a part that completely doesn't exist. At that point, it's beyond – it's more than unrealistic. It's just impossible. So at that point, it seems like we really need to resolve this fact. And I don't know how we do that in your proceeding. Well, again, if the government – if this Court finds that the realistic probability test is appropriate, then, yes, the remand would be appropriate to further develop the record with fact-finding and for the agency to consider that. However, there's a – Can you remand to the BIA to determine whether there is such a thing as a geometric isomer? Remand to the – yes. Remand to allow – What expertise does the BIA have in determining whether there's a geometric isomer? Well, because the issue wasn't brought below here, Your Honor, the BIA was not able to assess any information elicited by the parties. And so that's why – And the BIA would probably have to send it to an IJ to do that. Yes. You're correct, Your Honor. However, there's an additional reason not to do that aside from precedent, and that's that the categorical approach was designed to prevent these very mini-trials from going forward. The fallout of allowing this type of inquiry to move forward is that there will inevitably be, either on this issue or other issues, inconsistent opinions in the lower courts, and it would be incumbent upon this Court to clean up that mess. So the basis for the categorical approach is grounded in judicial economy, and that is part of why this Court has limited its application of the realistic probability test. Turning back to the isomers in the California Health and Safety Code, there are four sections of the Health and Safety Code that list – that include different lists of controlled substances. All four of these sections include exceptions to the default definition of isomer. In some cases, only optical isomers are applied to a substance, such as amphetamine, which is one line above methamphetamine in statute. Other sections include a broader definition of isomer – optical, geometric, and positional isomers. So California has – and again, this occurs over all four sections that include lists of controlled substances. California has been deliberate about when it intends to apply its default definition and when it does not. And the federal statute likewise has exceptions carved out. In – Do you know if there's legislative history about those provisions that – like, was there testimony that – about – from scientists about which ones should have this isomer listing and which ones shouldn't? I don't know that, Your Honor. The government brought in legislative history about – in its brief about changing the definition with regards to cocaine. But, again, what's noteworthy is that they did not ultimately only change the definition as to cocaine. They applied it to other places as well, and they've either at the time or since applied different definitions to different substances, as has the federal statute. If there's no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. Melissa Lott on behalf of the U.S. Attorney General. The Court should dismiss the petition with regard to removability on the controlled substance ground and remand on the issue of relief. Dismissal – On the issue of – your voice dropped. Oh, I'm so sorry. Remand on the issue of relief. Dismissal and removability is required because the petitioner failed to exhaust the only challenge to removability on the controlled substance ground that he raises now, which is his argument that the California definition of methamphetamine is broader than the federal definition. The petitioner could have raised the issue before the Board, as the petitioner in Lorenzo did, but he did not, and he was not foreclosed from doing so. As he concedes, while the Court had previously held in addressing California methamphetamine convictions that it was a controlled substance under the Federal Controlled Substances Act, the Court had not previously addressed this particular issue, and he was required to exhaust this legal challenge. There was also – this Court has previously found in an unpublished decision in 2015, which postdates the cases he relies on, to argue that the issue was essentially foreclosed. And in that case, this Court dismissed on exhaustion grounds the petitioner's challenge to the California definition of methamphetamine as not being coextensive to the federal definition. In that case, it's Perez v. Lynch. Let me understand you. What you say is that we should dismiss this as a claim based on the Controlled Substances Act, but remand to allow the BIA to determine whether this was an aggravated felony and therefore disqualifies or does not from the relief requested. Yes, that's correct, Your Honor. Thank you. So, yes, the outcome in this case should be dismissal in part and remand in part. But if the Court were to decide that the exhaustion requirement had been met, then it should deny the petition on the issue of removability because this is not a case where the statute's overbreadth is evident from its text. And that's because... Go ahead. Just briefly, Your Honor. So there's the two state statutes at issue. There's the methamphetamine statute, which includes the possessive its between the word methamphetamine and isomers. And then you have the general definitional statute, which includes two types of isomers, the optical isomers and the geometric or also called diastereomeric isomers. So when you put the two statutes together, the general definition tells you the types of isomers that are included in the term isomer, but the its in the methamphetamine statute, the possessive its, qualifies the application of the terms in the general statute to the isomers that actually correspond to methamphetamine. And additionally, when you define the two types of isomers... Doesn't that just get us back to the fact question? I mean, I know it's the government's position that this kind of isomer doesn't exist, but it seems like that's an issue that's actively being contested all over the place in a lot of cases. I mean, we have a lot of pending cases. I bet there are even more in other courts and at the agency. So someone needs to resolve this fact question at some point, right? And it can't be us as a panel. So how do you propose that this fact question get resolved? So, Your Honor, you're correct. We don't have a factual record in this case regarding either the existence or the nonexistence of a geometric isomer of methamphetamine. And it could be treated as a factual issue, and it could have been treated as a factual issue in this case had it been exhausted. But there's also in... The court could also, if it determined that the issue were exhausted, it could also look to the statute and determine whether the overbreath is evident on the face of the statute. And our position is that it's not. And so then from there, because it depends on the underlying science of isomers and how they correspond to substances... Tell me why the overbreath issue is not patent on the face of the statute. Yes, Your Honor. I didn't quite get you on that. Okay. We have a California statute which says isomers are two kinds, including a geometric. And the federal statute doesn't talk about geometric isomers at all. Why is that not inconsistent? Because when you look at the definitions for the two types of isomers that are included in the California, the general isomer definition for California, once you define those, and I'm talking about the dictionary definition and how case law is explained. The definition of which? Of both of them. So if an optical isomer, another word for an optical isomer is an antiomer, and that's either of a pair of chemical compounds whose molecular structures have a non-superimposable mirror image relationship to each other. And as indicated in the cases that we cited in our filings to this court, whether... Those cases indicate that this is, and I'm referring now to Sanofi, Syntholabo, and this is a federal circuit decision. And that case says when there is only one asymmetric carbon atom in a molecule, and thus only two stereoisomers, those are called enantiomers. So in other words, optical isomers. The definition for diastereomer, which is how the California definition also refers to geometric isomers. So that definition, and this is the dictionary definition here, is that's a stereoisomer of a compound having two or more chiral centers that is not a mirror image of another stereoisomer of the same compound. So it's going to depend on the underlying chemical makeup of a substance, what isomers correspond to the substance. And so in terms of California methamphetamine, you have the methamphetamine statute, which limits the isomers that apply because of the possessive its. It's only going to punish methamphetamine's isomers. And you have the two types of isomers in the general definition, and those are only going to be present or attached to a substance if the underlying chemical makeup of the substance allows for it. And so can I just try to summarize and see if I understand this? So I think what you're saying is there's a general definition of isomer that has two types, but you're saying in the meth statute it says its, meaning the ones that meth has, and so your position is meth only has one, not two. But that's a factual question, right? Just to clarify, Your Honor, I'm not saying that geometric isomers of methamphetamine don't exist because we don't have that factual record. That is the government's argument in other cases where there is such a factual record. So if that's not what you're saying, what does its do? I thought its was your use of its was predicated on the existence in the world, but you're saying its means some other way of limiting? No, I'm sorry. I am saying that its, in this case, it's going to refer to existence. And, again, we don't have a factual record that shows that one way or the other. But there's ambiguity in the statute in how these two types of isomers would relate to the particular controlled substance. And because that's an unknown, the overbreath isn't evident on the face of the statute. But the only way that it isn't overbroad is if we as a court should see its and know that there's only one type of isomer of meth, and so reduce two to one because we know that, and that's going to be impossible for us, right? Well, Your Honor, I think that it's not just the term its. It's the two types of isomers. Those depend on the underlying chemical makeup of the substance. But that's also something we don't know, right? I mean, we're not chemists, so I don't understand. I mean, this is just a mess. I don't understand how we can resolve this statutory interpretation question without someone somewhere in this country resolving this question of what kind of meth exists. And I appreciate that, Your Honor. I think that so the government's position in this case is that because and this is, again, assuming exhaustion, because this isn't an issue that the court even needs to reach in this case. Let me ask you a question. Are you proposing? I heard you say that there's an ambiguity in the statute. Are you proposing some sort of our deference, that we should determine that there's only one kind of isomer because the government, which is expertise in the interpretation of statutes, takes a look at the statute and finds its ambiguity and determines it? Are you arguing at all deference? That is not what I'm arguing, Your Honor. Thank you. I'll scratch that off. Okay. No. Our only argument or our argument on the merits, and, again, this is assuming the court determines that it's been exhausted. It does not need to reach this issue in the case. But assuming exhaustion, if the court reaches it, because the interplay between the general definition of isomer and the specific controlled substance that it's applied to, because that's ambiguous, that shows that the statute is not overbroad on its face. I'm sorry? The text of the statute is not overbroad. Correct. And then we can't apply Duenas-Alvarez. Correct, Your Honor. And so then once you look at the California case law, there's no reference to a geometric isomer of methamphetamine in there. I mean, there are unpublished decisions where there are references to the type of methamphetamine. They're only the D-methamphetamine and L-methamphetamine, and those are the optical isomers which are punished under the federal statute. How would it come up that it would be referenced in the California case law? Like, why would they talk about what type of isomer someone was arrested with? Well, looking at those unpublished cases, it's clear that sometimes it comes up. There are references made. There's also, prior to the enactment of California's isomer definition, there was litigation about cocaine, for instance. And that's, as the legislative history shows, what really prompted the enactment of this definition. And so I think you could expect to see it either prior to the definition of isomer in 1985, or you could see it just come up through the case law the way that it has in some of these unpublished cases. And was it just mentioned in passing in these unpublished cases? That's correct. Without anything turning on it? That's correct. Because if—and the cases, like the published cases on methamphetamine, they don't specify the specific isomer. But it does come up the same way that these references might be made to just generally what's covered under a statute. And then, I mean, outside of California case law, there's also— on the federal side, for instance, where the definition is limited to optical isomers, you haven't seen challenges there based on a geometric isomer, for instance. But just under the realistic probability approach, there is no— there's no reference to a geometric isomer in the California case law. And so then applying that, the realistic probability approach, which is that the California definition is not— or that California doesn't punish a broader range of isomers than the federal definition. Thank you very much. If the Court has no further questions, we would— we would—the government asks that the petition be dismissed as to removability and remanded on the issue of relief.  Thank you. Three points on rebuttal, Your Honors. First, regarding the exhaustion issue, there's no failure to exhaust here because of the test outlined in Soka's son. That test, the appearance of foreclosure rule, has no meaning or vitality if we can just say, well, could the defendant have raised the argument, a novel argument that appeared foreclosed by law. How does Lorenzo change whether it's foreclosed given that Lorenzo isn't published? Great question, Your Honor. Lorenzo, which happened after Mr. Espinoza's proceedings at the BIA and the IJ, does bring attention to the issue that this is—to the isomer issue that this is now an open issue. It's not binding, but it is citable, it's persuasive. And it could be found to put a potential petitioner on notice that that's an argument that should be made. But that decision did not come down until after Mr. Espinoza's proceedings below. The government briefly mentioned— Is your position that an issue is foreclosed unless somebody else has tried to unforeclose it? Not quite, Your Honor. The issues appeared to be foreclosed by the holdings, again, in Valdivinos-Torres and Coronado and decisions made by the BIA. So it's not necessarily that no one had raised it before. But Lorenzo raising the novel argument did put the crimmigration community, if you want to call it that, on notice that this is an open issue. The government briefly cited Perez v. Lynch. There, a similar argument was rejected for exhaustion. That's an unpublished decision, and the court does not elaborate on why it did not allow the exception to exhaustion. So it's not clear what arguments were made there or why the court made that determination. So it's really not relevant here. Second, to get back to this Court's question on the pending case next month, if the court does want to allow the government to have a hearing on the science, it could stay this case, pending the outcome of that case. However, again, Mr. Espinosa's contention is that's not a permissible use of the realistic probability exception. And lastly, this Court could resolve the issue today by assuming that the legislature meant what it explicitly said in the act, which, I'm sorry, in the statute, which is what this Court has always done. And again, when the legislation is clear, there's nothing else to construe, as the U.S. Supreme Court has held in Shreveport Grain Elevator. That's what this case is. It's a black-and-white case of explicit overbreadth, and this Court should grant the petition before it. Thank you. Okay. Thank you very much. The case of Espinosa-Aurejel v. Barr is submitted.
judges: Wallace, Bea, Friedland